IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAMBER SPINE TECHNOLOGIES,**<br>Plaintiff,<br><br>v.<br><br>**INTERMED RESOURCES TN, LLC,**<br>Defendant. | CIVIL ACTION<br><br><br><br>NO. 22-3648 |

**HODGE, J.**                                                                                                             August 11, 2023

**I.     INTRODUCTION**

Plaintiff, Camber Spine Technologies,[1] brings this breach of contract lawsuit against Defendant, Intermed Resources TN, LLC for its alleged nonpayment to Plaintiff, after Plaintiff delivered its medical implants and accessories to various hospitals, but Defendant, a "billing intermediary," did not remit or collect payment from these hospitals for these products, as required. Presently before this Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to Identify the Real Party in Interest or to Transfer Venue under 28 U.S.C. §§ 1404 and 1406 (ECF No. 8). For the following reasons, Defendant's Motion is denied.

---

[1] Defendant also moves to dismiss Plaintiff's complaint because, according to it, Plaintiff has incorrectly identified the proper plaintiff in the caption which should, instead, name "Camber Spine, LLC" who was the signatory to the parties' contract. (ECF No. 8-3) "Camber Spine" is the registered fictious name for Camber Spine Technologies, LLC and thus, according to Plaintiff, the only error in the caption is the lack of the word "LLC." (ECF No. 9 at 19.) The Court, by way of the order accompanying this memorandum opinion, grants Plaintiff leave to amend the caption to identify the correct legal entity and any fictious name "doing business as" the Plaintiff pursuant to Federal Rule of Civil Procedure 15(a). Therefore, the Defendant's named-plaintiff argument is moot.

II.  **BACKGROUND**

Plaintiff – a Pennsylvania corporation headquartered in King of Prussia, Pennsylvania – designs, manufactures, and sells medical implants and related accessories for use in spinal surgeries under the brand name Camber Spine.  (ECF No. 1-2 at 4-5.)  Though Plaintiff sells its products to hospitals and medical facilities outside its home-state, it manufactures, assembles, and warehouses many of them in Pennsylvania. (ECF No. 9-2 at 4.)  In 2018, Plaintiff – who considered itself "too small, with not enough of a track record" for certain organizations to buy Plaintiff's products "directly" – sought to retain the services of a "billing intermediary" so Plaintiff could gain access to a larger, nationwide market.  (ECF No. 9 at 7.)  Plaintiff thought it might find that partner in Defendant, Intermed Resources TN, LLC, a Tennessee limited liability company that markets medical equipment and who "works closely with Group Purchasing Organizations (GPOs)" and Integrated Delivery Networks (IDNs) nationwide.  (ECF No. 8-3 at 1; ECF No. 9 at 7.)

Plaintiff entered into a contract with Defendant, dated July 16, 2018, pursuant to which Defendant became Plaintiff's "agent to represent. . .[Plaintiff] in securing contractual agreements and relationships with designated GPOs and IDNs for the sale and distribution of. . . [Plaintiff's] Products to the GPOs, IDNs and their respective members and participants."  (ECF 1-2 at 5, 12.) As is increasingly common in our interconnected world, neither Defendant or Plaintiff (or any of their agents) went to each other's physical, company location to negotiate and sign this agreement.  (ECF No. 9-2.)  Rather, Plaintiff and Defendant "negotiated the Agreement by email and telephone, with Camber's in-house attorney, Marjorie Ochroch, negotiating the Agreement for Camber from Camber's office in Pennsylvania."  (ECF No. 9-2 at 7.)  The agreement gave Plaintiff:

>"the ability to sell its Spinal Products in thousands of medical facilities all over the United States, including in Pennsylvania. *See* Locations (lifepointhealth.net) (locations in PA and TN), Our Communities (trinity-health.org) (269 medical facilities in PA and 0 in TN), and Find a Facility (tenethealth.com) (locations in PA and TN)."

(*Id.* at 3.) Many of Plaintiff's products sold under the Agreement were manufactured and/or assembled in Pennsylvania." (*Id.* at 4.) And all were "sent from the manufacturing facilities to Camber's warehouse in King of Prussia, Pennsylvania. . . before distribution from the Pennsylvania warehouse directly" to the hospitals. (*Id.*) The purchasers of Plaintiff's products send a purchase order and a surgical report to both Plaintiff and Defendant. (*Id.*) Plaintiff, whose customer service representatives and finance team are located in King of Prussia, Pennsylvania, would communicate directly with the hospital-purchasers regarding the invoices and to arrange shipment of the products. (*Id.*) Defendant "also reaches out and communicates with" Plaintiff's finance team. (*Id*. at 5.)

Upon receipt of the invoices from the purchasers, Plaintiff would issue its own invoice to Defendant. (*Id.* at 4.) According to Plaintiff, pursuant to the parties' contract, Defendant was then supposed to directly collect payment from the entities who ordered the Camber Spine products. (ECF No. 1-2 at 6.) Defendant was further required to remit 94% of the payment it received from these entities to Plaintiff and retain 6% for Defendant's "billing intermediary" services. (ECF No. 1-2 at 6.) But according to Plaintiff, Defendant did not perform as required by this contract as Plaintiff never received payment for invoices it issued for products sold to ten different hospitals between December 10, 2019 until December 14, 2021 and totaling $444,440.88. (ECF No. 1-2 at 8.) Instead, according to Plaintiff, Defendant either: 1) wrongfully accepted payment for Plaintiff's medical products without remitting Plaintiff's 94% to them, or 2) never collected payment from the entities who paid for and received Plaintiff's

products as required by the parties' contract. (*Id.* at 8.) Central to this contractual dispute is Defendant's alleged notice of an intent to terminate the contract, it says it gave to Plaintiff on August 1, 2021. (*Id.*) According to the Plaintiff, after Defendant gave notice, the contract specified that it remained in effect for the next sixty (60) days. (*Id.*) That, in turn, required Defendant to collect and remit payment for the $444,440.88 owed to Plaintiff, as the purchase orders and invoices totaling this amount were issued before the sixty-day termination period elapsed. (*Id.*)

Plaintiff filed this action in Pennsylvania state court, which was removed to this Court on the basis of diversity jurisdiction on September 13, 2022. (ECF No. 1.) On October 5, 2022, Defendant moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or in the alternative, to transfer venue pursuant to U.S.C. § 1404(a) or § 1406(a). But before Defendant filed this Motion, thirty days after the present action was filed, on September 20, 2022, Defendant filed a lawsuit arising out of the very same contractual dispute in the Chancery Court for Williamson County, Tennessee. That action was subsequently removed to the United States District Court for the Middle District of Tennessee and stayed pending this Court's determination as to Defendant's Motion in the present case due to the potential applicability of the "first-to-file" doctrine.[2] *See Intermed Resources TN, LLC v. Camber Spine, LLC*, 22-cv-850 (Md. Tenn.) (ECF No. 15) ("Tennessee Action"). The Tennessee Action was not served upon Plaintiff until after Defendant filed its Motion in the

---

[2] Under the "first-to-file" doctrine, when two substantially similar lawsuits are filed in different federal district courts with jurisdiction, there is a presumption that the court where the matter was filed first should hear both lawsuits except in special circumstances. *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir. 1941); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990). If the first-filed court has jurisdiction over the matter and the doctrine applies without an applicable exception, the second-filed court can either stay, dismiss, or transfer the action to the first-filed court. *Id.*

4

instant action. (ECF No. 9-2 at 5.) On February 2, 2023, this case was reassigned from the Honorable Cynthia M. Rufe to the Honorable Kelley B. Hodge. (ECF No. 23.)

### III. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the ability of the court to assert judicial power over the defendant. Fed. R. Civ. P. 12(b)(2). In reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). If no evidentiary hearing is held on the motion to dismiss, the plaintiff need only make a prima facie showing of personal jurisdiction. *Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The plaintiff has the burden of establishing "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) (A plaintiff satisfies this prima facie standard by presenting facts that, if true, would permit the court to exercise personal jurisdiction over defendant.).

However, when a defendant challenges a court's personal jurisdiction, the plaintiff must then establish its existence. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). The plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's . . . motion to dismiss" for lack of personal jurisdiction. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735

F.2d 61, 66 n.9 (3d Cir. 1984). Instead, the "plaintiff must respond with actual proofs, not mere allegations." *Id.*

Federal Rule of Civil Procedure 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue. Fed. R. Civ. P. 12(b)(3). The purpose of venue, in most instances, "is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman Transmissions Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). If a case falls into at least one of the categories set forth in 28 U.S.C. § 1391, venue is proper. *Atl. Marine Constr. Co. v. W.D. Tex.*, 571 U.S. 49, 55 (2013). When venue is defective, 28 U.S.C. § 1406(a) authorizes the court to either "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

**IV.   DISCUSSION**

Defendant argues that personal jurisdiction and venue are improper, and thus, this Court should dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction or under 28 U.S.C. § 1406(a), transfer venue to the United States District Court for the Middle District of Tennessee or dismiss this action for improper venue. Alternatively, if this Court finds that personal jurisdiction and venue are proper, Defendant requests that this case be transferred under 28 U.S.C. § 1404(a) "[f]or the convenience of the parties and witnesses, in the interests of justice." The Court finds that it has specific personal jurisdiction over Defendant and that venue is proper. Further, the Court finds that none of the Section 1404(a) factors support transferring this case to the Middle District of Tennessee. Plaintiff is physically located in the Eastern District of Pennsylvania and its choice to litigate here is entitled to substantial deference, particularly in cases such as this one, that has a strong connection to this state. *See Infinity*

6

*Computer Prods., Inc. v. Toshiba Am. Business Solutions, Inc.*, Civ. No. 12-6796, 2018 U.S. Dist. LEXIS 31938, at *4 (E.D. Pa. Feb. 27, 2018) (Quiñones, J.).

1. **Personal Jurisdiction**

To determine whether personal jurisdiction is proper, a federal court sitting in diversity must assess whether the defendant's contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment. *See O'Connor*, 496 F.3d at 316. Pennsylvania's long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 PA. STAT. AND CONS. STAT. ANN.§ 5322(b); *see also Mellon Bank (East) PSFS*, 960 F.2d at 1221. To satisfy the Due Process Clause, a federal court entertaining a suit must possess one of three forms of personal jurisdiction over the defendant: specific jurisdiction, general jurisdiction, or consent to jurisdiction. *Mallory v. Norfolk Southern Ry.*, 143 S. Ct. 2028, 2039 (2023). General jurisdiction allows a court to exercise jurisdiction over the defendant unrelated to the Plaintiff's cause of action but requires that the defendant's contacts be "so 'continuous and systematic' as to render them essentially at home in" this state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Nadzam v. Broan-NuTone*, LLC, No. 20-6088-KSM, 2020 WL 7640929, at *2 (E.D. Pa. Dec. 23, 2020). Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank (East) PSFS,* 960 F.2d at 1221; *see also Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414 (1984). Courts apply a three-part inquiry to determine whether specific jurisdiction exists: (1) "the defendant must have 'purposefully directed its activities' at the forum;" (2) "the litigation must 'arise out of or relate to' at least one of those activities;" and (3) the exercise of jurisdiction must "otherwise comport[] with 'fair play and substantial justice.'" *O'Connor*, 496

7

F.3d at 317 (internal citations omitted).  Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 n.18 (1985).   Lastly, as clarified recently by the Supreme Court in *Mallory v. Norfolk Southern Ry.*, an additional avenue for personal jurisdiction exists where a defendant has consented to suit, which can occur by a defendant registering to do business in that state. 143 S. Ct. at 2039.

Defendant, a Tennessee limited liability corporation, argues that it is not subject to the personal jurisdiction of this Court because it has not committed any acts aimed or purposely directed at Pennsylvania.  According to the Defendant, the parties' contract has no connection to Pennsylvania because the products which Defendant allegedly did not remit or collect payment for were delivered to hospitals, not in Pennsylvania, but in five different southern states.[3]  (ECF No. 8-3 at 2.)  And since Defendant, who views itself as a "regional company based in Tennessee," never physically went to Pennsylvania for any purpose related to the contract, according to them, it "has no contact" with this state and thus, should not be subject to this Court's jurisdiction.  (ECF No. 8-3 at 3, 5.)  Plaintiff, in contrast, argues that personal jurisdiction is appropriate because Defendant had sufficient contacts with Pennsylvania in connection with the parties' contract. (ECF No. 9 at 5.)  The contacts that Plaintiff argues make personal jurisdiction appropriate include the following: (1) the products Defendant allegedly did not remit or collect payment for, were warehoused and shipped from Pennsylvania, with many manufactured and/or assembled within the state; (2) the contract draft, which was negotiated by Plaintiff's in-house counsel while counsel was in Pennsylvania, was sent to Plaintiff's

---

[3] According to Defendant, the ten named hospitals in the complaint, who all purchased Plaintiff's products through HealthTrust, include three located in Tennessee, two in Texas, three in Florida, one in New Mexico, and one in Louisiana.  (ECF No. 8-3 at 2.)

Pennsylvania headquarters; (3) Plaintiff sent invoices from its Pennsylvania offices to Defendant; (4) Defendant sent checks for payment under the parties' contract to Plaintiff's lockbox in Pennsylvania that were deposited in a Pennsylvania bank account; and (5) Defendant regularly dealt with Plaintiff's personnel, all working out of Plaintiff's Pennsylvania office. (*Id.*) Plaintiff also notes that Defendant reaped "substantial sums of money" for every sale made under the agreement, and that Defendant, could of, but did not include a choice-of-law or forum selection clause in the parties' contract selecting Tennessee as the venue. (*Id.*)  Plaintiff points to marketing material from Defendant's website that suggests it had business relationships with multiple entities nationwide, including in Pennsylvania. (ECF No. 9 at 9.)  The purpose of the parties' agreement, according to Plaintiff, was to get access to these entities. (ECF No. 9 at 9.)

      Defendant suggests that because it did not leave Tennessee, that this Court does not have jurisdiction over it. A defendant that reaches out to Pennsylvania from its home state without ever leaving it does not insulate it from the jurisdiction of this Court. *Thrivest Legal Funding, LLC v. Gilberg*, Civ. No. 16-3931, 2017 U.S. Dist. LEXIS 50183, at *6 (E.D. Pa. April 3, 2017) ("Specific jurisdiction does not require physical presence in the forum state during contract negotiations or performance.")  Indeed, if the Court accepted Defendant's argument, personal jurisdiction would seldom exist over out-of-state and so-called "regional" defendants in our increasingly digital world. The law recognizes that contemporary business relationships are often developed through electronic communication, and thus, ["w]here these types of long-term relationships have been established, actual territorial presence becomes less determinative." *GE v. Deutz AG*, 270 F.3d 144, 151 (3d Cir. 2001) (citing *Burger King*, 471 U.S. at 476).  Thus, when a defendant reaches out beyond his own state to "create continuing relationships and

9

obligations with citizens of another state," it is subject to the jurisdiction of that state. *Burger King*, 471 U.S. at 473.

Plaintiff focuses its opposition to Defendant's Motion on a case, *Novinger's, Inc. v. A.J.D. Constr. Co.*, 376 F.Supp.3d 445 (M.D. Pa. 2019), but the Court finds the decision in *Synder Bros. v. E. Ohio Reg'l Hosp. at Martin's Ferry, Inc.,* Civ. No. 19-1238, 2020 U.S. Dist. LEXIS 102269 (W.D. Pa. June 11, 2020) to be persuasive and more analogous to the present case. In *Synder Bros.* the plaintiff, a Pennsylvania natural gas producer and supplier brought a lawsuit against an Ohio hospital who had entered into an agreement with the plaintiff to provide gas on a routine basis, based on purchase orders issued by the hospital. *Id.* at * 3. The plaintiff alleged that the defendant failed to pay for certain quantities of natural gas that the hospital received from the plaintiff. *Id.* According to the parties' contract, the plaintiff was to deliver the gas to a location in Ohio, and then the defendant was responsible for arranging transportation to its facilities, also in Ohio, from this delivery point. *Id.* Like the present case, in *Synder Bros.* the defendant did not leave the state of Ohio for contract negotiations or visit Pennsylvania; rather, the parties executed their contract following their respective "agents' email and phone conversations." *Id.* at *5-6. Even though the defendant did not personally enter Pennsylvania and the plaintiff sent the gas to Ohio, the court held that the defendant's contacts with Pennsylvania were sufficient to enable the exercise of specific personal jurisdiction. The factors relevant included a Pennsylvania choice-of-law clause in the parties' contract, the defendant's payment of invoices by check that it mailed to Pennsylvania, the parties' long-term supply agreement, and the defendant's extensive communications with the plaintiff. *Id.*

Like *Synder Bros.*, the contacts Defendant has with Pennsylvania arising out its contract with Plaintiff indicates that it has purposefully availed itself of the benefits and privileges of

10

conducting business in the Commonwealth of Pennsylvania. Defendant has had a longstanding and multi-year business relationship with Plaintiff, a Pennsylvania company, which spanned from July 16, 2018 when the contract was signed, until at least sometime around August 1, 2021 when Defendant gave notice that it intended to cancel the contract. The communications between the parties were not isolated as Defendant was in contact with Plaintiff's finance team and dealt with Plaintiff's personnel located in Pennsylvania. The goods Plaintiff sold pursuant to the parties' contract, many of which were manufactured and assembled in Pennsylvania, were warehoused and distributed from Pennsylvania. Defendant paid the invoices under the contract by check which it sent to Plaintiff's lockbox in Pennsylvania who in turn, deposited the check in a Pennsylvania bank account. Thus, similar to *Synder Bros.*, Defendant's alleged "breach of contract caused damages in Pennsylvania" and all of its numerous touchpoints with Pennsylvania arise out of and relate to the parties' contract. *Id.* * 14. While there is no choice-of-law provision in the parties' contract as in *Synder Bros.*, Defendant's decision not to specify in the contract that Tennessee law applies or designate Tennessee as the venue is notable given that the contract contemplated that Plaintiff's goods would be sent to third parties nationwide. Indeed, Defendant agreed to become Plaintiff's "agent to represent. . .[Plaintiff] in securing contractual agreements" while touting its relationships with thousands of medical facilities all over the United States, including entities in Pennsylvania. (ECF No. 1-2 at 12; ECF No. 9 at 8.) If Defendant, a sophisticated entity, wanted litigation arising out of its contract with Plaintiff to occur only in Tennessee, its home state, it could have designated Tennessee as the venue in the parties' contract with a forum selection clause. Instead, it did not and opened itself up to being taken into court elsewhere if sufficient minimum contacts existed establishing personal jurisdiction, which it does here.

Defendant entered into a contract to be an "agent" for Plaintiff, a Pennsylvania company, so as to assist Plaintiff in selling goods that were made, assembled, warehoused and/or distributed from Pennsylvania both within and outside this state. Defendant communicated with Plaintiff's Pennsylvania personnel and paid Plaintiff, after taking its cut, which Defendant sent to a lockbox in Pennsylvania over the course of three years. It should come as no surprise now that Defendant, by having numerous contacts with Pennsylvania relating to its contract with Plaintiff, has purposefully availed itself to the jurisdiction of this Court. *Burger King*, 417 U.S. at 474 ("the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed"). Given the totality of these contacts, in this instance, exercising jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice. Therefore, the Court agrees with Plaintiff and finds that it has specific personal jurisdiction over Defendant. [4]

2. **Venue under 28 U.S.C. § 1391: Motion to Transfer or Dismiss under Section 1406(a) or Transfer under 1404(a)**

The Court also finds that venue in this District is proper under 28 U.S.C. § 1391. Section 1391 authorizes venue over a single defendant that is a domestic limited liability corporation, such as Defendant, where it "resides" which is defined, in a single district state, to include any judicial district in which "it is subject to personal jurisdiction." In a multi-district state like Pennsylvania, "reside" is defined to include "any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *See* 28 U.S.C. § 1391(b)-(d). Defendant is subject to this Court's personal jurisdiction arising out of

---

[4] Because Defendant is not registered to do business in the state of Pennsylvania, consent to jurisdiction as set forth in *Mallory* is not at issue in this case. (ECF No. 8-3 at 5, 7) (stating that Defendant "did not register with the Pennsylvania Department of State"). And since this Court finds it has specific jurisdiction over Defendant, the Court need not address general jurisdiction.

its contact with Plaintiff in King of Prussia, Pennsylvania, which is within the Eastern District of Pennsylvania, and thus, "resides" here for purposes of 28 U.S.C. 1391(b)(1) making venue proper. In addition, venue is also proper because this District is where "a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id.* at § 1391(b)(2); *see It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH,* No. 11-CV-2379, 2013 U.S. Dist. LEXIS 107149, at *12 (M.D. Pa. July 31, 2013) (where entire business relationship was conducted via telephone or email, court held that venue was proper because those calls and emails were conducted from the Middle District of Pennsylvania, and the plaintiff received payment and shipped its products from the Middle District). Therefore, this Court declines to dismiss or transfer venue under 28 U.S.C. §1406(a).

However, Defendant also argues that even if personal jurisdiction and venue are proper, the Court should nonetheless transfer this case to the Middle District of Tennessee pursuant to 28 U.S.C. §1404(a). Section 1404(a) permits a court to transfer an action "[f]or the convenience of the parties and witnesses" and "in the interest of justice" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts are afforded broad discretion to determine whether transfer is justified under Section 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). To prevail on a motion under Section 1404(a), the movant must generally establish: (1) an adequate alternative forum is available; (2) the private interests of the parties weigh in favor of transfer; and (3) the public interests weigh in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *MaxLite, Inc. v. ATG Elecs, Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016).

Plaintiff does not dispute that this action could have been brought in the Middle District of Tennessee. Therefore, the Court turns to an analysis of the private and public factors under Section 1404(a). Collectively, the private and public factors do not weigh in favor of transfer to the Middle District of Tennessee. The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora); and (6) the location of books and records (only to the extent that the files could not be produced in the alternative forum). *Digital Tech. Licensing LLC v. Sprint Nextel Corp.*, No. 07-cv-5432, 2011 U.S. Dist. LEXIS 53904, at *3 (D.N.J. May 19, 2011); *see also Jumara*, 55 F.3d at 879. Importantly, the analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive but rather are considered on a case-by-case basis. *Jumara*, 55 F.3d at 879.

As an initial matter, Defendant, not Plaintiff, bears the burden of showing that their chosen forum is more convenient than this District. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724, 19 V.I. 642 (3d Cir. 1982); *Jumara*, 55 F.3d at 879. It fails to do so. Defendant argues that the Middle District of Tennessee will be more convenient because Defendant, potential non-party witnesses such as hospitals, and documents are either physically located there or in states

14

closer to Tennessee. (ECF No. 8-3 at 11.)   But Defendant ignores that the convenience of non-party witnesses is only considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  Defendant has "the burden of identifying witnesses who would be unavailable at trial." *Brenner v. Consol. Rail Corp.*, No. 09-cv-1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009).  The Defendant has not sustained this burden, as nothing in Defendant's Motion suggests that witnesses might be unavailable for trial in the Eastern District of Pennsylvania.  Likewise, a court considers the location of books and records only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879.  Defendant, however, has not identified books or records that could not be produced in the Eastern District of Pennsylvania, or that cannot be made available electronically.  This factor, therefore, does not weigh in favor of a transfer.

The Defendant's business presence and choice of forum in the Middle District of Tennessee is at most neutral.  Plaintiff resides in this District. And a plaintiff's choice to litigate in its home forum is "entitled to paramount consideration." *Infinity Computer Prods., Inc. v. Toshiba Am. Business Solutions, Inc.*, Civ. No. 12-6796, 2018 U.S. Dist. LEXIS 31938, at *10 (E.D. Pa. Feb. 27, 2018) (Quiñones, J.).  This action also has significant connections to this District.  It involves a Pennsylvania company that sold goods made, assembled, warehoused and/or distributed from Pennsylvania.  Plaintiff alleges that Defendant, after communicating with Plaintiff's Pennsylvania personnel and sending checks to this state over a period of three years, failed to collect or wrongfully retained $444,440.88 for goods Plaintiff sent to hospitals pursuant to the parties' contract.  Many of these products were manufactured or assembled within Pennsylvania, and all were warehoused and distributed from this state.  Pennsylvania has a strong interest in providing a dispute forum for its residents who sold and delivered goods

15

manufactured, assembled, warehoused and/or distributed from this state, but which were allegedly not paid for by out-of-state entities and defendants.  Therefore, the Court declines to transfer this case to the Middle District of Tennessee.

V. **CONCLUSION**

For these reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to Identify the Real Party in Interest or to Transfer Venue under 28 U.S.C. §§ 1404 and 1406 is denied. An appropriate order consistent with this opinion follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____
**HODGE, KELLEY B., J.**